FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES M. MCFADDEN,

                Plaintiff,              Case No. 3:14 CV 1753

-vs-

                                           MEMORANDUM OPINION

CITY OF SANDUSKY,

                Defendant.

KATZ, J.

Plaintiff James McFadden filed a civil rights action pursuant to 42 U.S.C. § 1983 against the city of Sandusky, Ohio, and Lieutenant Michael Campbell alleging false arrest and municipal liability. (Doc. No. 1). Defendants then removed the case to this Court. (Doc. No. 1). Plaintiff later amended his complaint to include one count of civil Racketeer Influenced and Corrupt Organizations ("RICO") violations, pursuant to 18 U.S.C. § 1964, and to ask for declaratory and injunctive relief. (Doc. No. 6). Plaintiff has since withdrawn his allegations of civil RICO violations. (Doc. No. 29).

Now before the Court are Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), Plaintiff's brief in opposition, Defendants' reply, and Plaintiff's sur-reply. (Doc. Nos. 23, 28, 30, 34). Defendants have also asked this Court to find Plaintiff's attorney in violation of 28 U.S.C. § 1927. (Doc. No. 30 at 6–8). For the following reasons, the Court grants Defendants' motion for summary judgment and denies Defendants' request for sanctions.

I. Jurisdiction and Venue

The Court finds that it has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is also properly before this Court. *See* 28 U.S.C. §1391; N.D. Ohio R. 3.8.

II. Facts

The City of Sandusky has ordinances regulating vehicles for hire, such as taxis, within the city limits. Sandusky Ordinance § 747.11 provides that "[n]o person shall drive or operate a public vehicle for hire without first having obtained a public vehicle for hire driver's license . . . ." Sandusky Ordinance § 747.02 provides that this license requirement "shall not apply to public vehicles for hire from other jurisdictions, and having no Sandusky City public vehicle for hire business license, bringing passengers in to the City. This [ordinance] shall apply to the solicitation or acceptance of passengers in the City, and no operator or driver of any public vehicle for hire shall solicit or accept any passengers within the city of Sandusky . . . for any destination without first obtaining the necessary licenses required . . . ."

Plaintiff is a resident of Sandusky. On the evening of August 27, 2012, Plaintiff was driving a taxi for Chuck's Cab Company, which is owned by Charles Loan, when Sergeant Scott Dahlgren of the Sandusky Police Department pulled Plaintiff over for speeding. In Plaintiff's vehicle was Melissa Genser, a customer Plaintiff had picked up from her place of employment in Perkins Township and was transporting to a destination in Sandusky. During the course of the stop, Sgt. Dahlgren asked Plaintiff for his vehicle-for-hire driver's license. Plaintiff told Sgt. Dahlgren that he had no such license and that he did not believe one was required of him. Sgt. Dahlgren did not issue citations for either the speeding or the lack of a vehicle-for-hire driver's license.

Defendant Campbell later learned of Plaintiff's traffic stop and learned that Plaintiff did not have a vehicle-for-hire driver's license. Defendant Campbell claims to have spoken with the cab company's owner, Mr. Loan, who said he already knew about the traffic stop and that Plaintiff

2

was operating the taxi that evening without a vehicle-for-hire driver's license. Mr. Loan's company was in possession of a vehicle-for-hire business license, as required by Sandusky Ordinance § 747.04. Based on what he learned from Sgt. Dahlgren and Mr. Loan, Defendant Campbell applied for and received a warrant for Plaintiff's arrest. Plaintiff was arrested and charged with violating Sandusky's vehicle-for-hire driver's license ordinance, but the charge was later dismissed.

### III. Standard of Review

Summary judgment is proper where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting a genuine issue of material fact must support the argument either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A court views the facts in the record and reasonable inferences which can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A court does not weigh the evidence or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

The party requesting summary judgment bears an initial burden of demonstrating that no genuine issue of material fact exists, which the party must discharge by producing evidence to demonstrate the absence of a genuine issue of material fact or "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25 (1986) (internal quotation marks omitted). If the moving party satisfies this burden,

the nonmoving party "may not rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren,* 578 F.3d 351, 374 (6th Cir. 2009) (citing Fed. R. Civ. P. 56 and *Matsushita,* 475 U.S. at 586). The party opposing the summary judgment motion must present sufficient probative evidence supporting its claim that disputes over material facts remain; evidence which is "merely colorable" or "not significantly probative" is insufficient. *Anderson,* 477 U.S. at 248–52.

## IV. Discussion

A. False Arrest

To bring a claim under § 1983, Plaintiff must show that one of his constitutional rights was violated by another who was acting under color of law. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Plaintiff contends that Defendant Campbell did not have probable cause to seek and cause his arrest for violating Sandusky's vehicle-for-hire driver's license ordinance, thereby violating Plaintiff's right to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the Constitution. (Doc No. 28 at 7). Explicitly not at issue are questions concerning whether the arrest warrant was properly issued and whether a good-faith exception applies to the officers who arrested Plaintiff. (Doc. No. 28 at 9).

The right to be arrested only upon probable cause is guaranteed by the Fourth Amendment. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995). This right became applicable to the states through the Fourteenth Amendment. *Baker v. McCollan*, 443 U.S. 137, 142–43 (1979). Probable cause exists whenever "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Michigan v. De Fillipo*, 443 U.S. 31, 37

(1979). Such an assessment occurs not with the benefit of 20/20 hindsight, but "from the perspective of a reasonable officer on the scene . . . ." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001) (internal quotation marks and citations omitted). "Probable cause requires only the probability of criminal activity not some type of 'prima facie' showing." *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (citing *Illinois v. Gates*, 462 U.S. 213, 235 (1983)). "Once probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999). In a § 1983 action, the question of whether probable cause existed is usually a question for the jury, "unless there is only one reasonable determination possible." *Pyles*, 60 F.3d at 1215.

Here, it is undisputed that Plaintiff was operating a vehicle for hire on the night he was pulled over and that he was pulled over while transporting a fare. (Doc. Nos. 23 at 2 & 28 at 1). It is also undisputed that on that night Plaintiff did not have a vehicle-for-hire driver's license. (Doc. Nos. 23 at 12 & 28-1 at ¶ 3). The parties agree that Defendant Campbell later learned from Sgt. Dahlgren that Plaintiff was stopped and that he did not have a vehicle-for-hire driver's license. (Doc. Nos. 28 at 2 and 23-7 at ¶ 3). Thereafter, Defendant Campbell sought an arrest warrant for Plaintiff, and Plaintiff was subsequently arrested. (Doc. Nos. 23 at 3–4 & 28 at 3, 5).

The parties, however, disagree on two points. First, Plaintiff argues that the exception to the vehicle-for-hire driver's license requirement applies to him. He reads the exception to apply to any driver of a vehicle for hire who picks up a fare from outside the city and transports that fare into Sandusky, which Plaintiff was doing at the time he was stopped by Sgt. Dahlgren. (Doc. No. 28 at 3–5). Conversely, Defendants argue that the exception does not apply to Plaintiff. They

read the exception to apply only to drivers of vehicles for hire from other jurisdictions who also have no Sandusky vehicle-for-hire business license and who are transporting fares into Sandusky. (Doc. No. 23 at 10). Second, there is a genuine question as to whether Defendant Campbell spoke with Mr. Loan. Defendant Campbell swore in his affidavit that he spoke with Mr. Loan (Doc. No. 23-7 at ¶¶ 3–4), but Mr. Loan could not recall having spoken with Defendant Campbell. (Doc. No. 23-4 at 14). Questions are resolved in favor of Plaintiff, the nonmoving party, for the purposes of determining whether summary judgment is appropriate at this stage. *See Matsushita*, 475 U.S. at 587.

Even assuming Plaintiff was exempt under Sandusky's vehicle-for-hire ordinances and that Defendant Campbell never spoke with Mr. Loan, there was still enough evidence to lead Defendant Campbell to reasonably believe that probable cause existed to seek the arrest of Plaintiff. Sandusky Ordinance § 747.11 provides that "[n]o person shall drive or operate a public vehicle for hire without first having obtained a public vehicle for hire driver's license . . . ." Defendant Campbell learned from Sgt. Dahlgren that Plaintiff was pulled over while operating a vehicle for hire and that Plaintiff did not have a vehicle-for-hire driver's license. Plaintiff admits these facts to be true. These facts establish, at the very least, "the probability of criminal activity," as Plaintiff was discovered acting in a manner directly contrary to the directive of the ordinance. *See Criss*, 867 F.2d at 262. Plaintiff argues, however, that Defendant Campbell violated his right to be free from unreasonable seizure when he failed to fully investigate whether the exception to the vehicle-for-hire driver's license requirement applied to Plaintiff. (Doc. No. 28 at 12). Contrary to Plaintiff's assertion, once probable cause was established, Defendant Campbell was under no obligation to further investigate the matter in order to find evidence that might exculpate

6

Plaintiff. *See Ahlers*, 188 F.3d at 365. Plaintiff claims that Defendant Campbell should have at least spoken with him, at which point Plaintiff would have explained that the fare he was transporting originated outside the city limits. (Doc. No. 28 at 12). Even had Defendant Campbell done so, he would not have been required to take Plaintiff at his word or to postpone arresting Plaintiff in order to investigate further. *See Criss*, F.2d at 263 (holding that an officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause"). Therefore, the Court finds that probable cause existed for Defendant Campbell to seek the arrest of Plaintiff, and summary judgment on this issue is granted in favor of Defendant Campbell.

B. Qualified Immunity

Lieutenant Campbell has asserted the affirmative defense of qualified immunity. Qualified immunity shields government officials from § 1983 liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–18 (1982). Thus, the relevant two-pronged inquiry is whether "the facts alleged show the officer's conduct violated a constitutional right" and whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Once a qualified immunity defense is raised, "the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law." *Dominque v. Telb,* 831 F.2d 673, 677 (6th Cir. 1987) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Looking first to the question of whether Plaintiff has pled facts showing that Defendant Campbell violated his right to be free from unreasonable searches and seizures, the Court, as

7

addressed above, finds that Plaintiff has failed to establish facts by which a jury could find that Defendant Campbell sought his arrest without probable cause. Therefore, this Court need not address the second prong of the analysis. The Court finds that Defendant Campbell is entitled to qualified immunity.

C. *Monell* Claim

Plaintiff has alleged claims of municipal liability against Defendant City of Sandusky, claiming the city's "custom, policy and practice of not training, supervising, or acquiescing in the unconstitutional conduct of its officers" led to the "constitutional deprivations inherent in" Plaintiff's arrest. (Doc. No. 28 at 13). The constitutional deprivations alleged appear to be the insufficiency of the affidavit used to secure the warrant. To succeed on a claim of municipal liability, a plaintiff must establish that his constitutional rights were violated and that a policy or custom of the government entity was the moving force behind the deprivation of those rights. *Miller v. Sanilac County*, 606 F.3d 240, 254–55 (6th Cir. 2010); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal official actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Plaintiff attempts to establish his *Monell* claim by showing that the city had a policy of inadequate training or supervision of its police officers and by showing that the city engaged in a custom of acquiescence of the unconstitutional acts of its officers.

8

On a claim against a municipality for failure to train or supervise, "the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 699 (6th Cir. 2006). To prove the training Sandusky officers received on how to obtain a valid warrant was inadequate, Plaintiff has offered evidence of the city's procedure for obtaining warrants in effect at the time of Plaintiff's arrest and the training the officers received on that procedure. According to the current Sandusky Clerk of Court, the procedure for obtaining warrants at the time of Plaintiff's arrest required officers to swear to the veracity of the facts listed in the complaint. (Doc. No. 28-2 at 1). The complaint sworn to by Defendant Campbell for Plaintiff's arrest lacks any particularized facts and contains, instead, a generalized assertion that Plaintiff violated Sandusky Ordinance § 747.11. Complaints of this nature have previously been held to be inadequate to establish probable cause. *See Giordenello v. United States*, 357 U.S. 480, 485–86 (1958). Defendant Campbell claims that his written incident report, which contains the facts that led to his conclusion that probable cause existed for the arrest, would have been submitted along with the complaint. (Doc. No. 25 at 42). The complaint fails to make any reference to the incident report, however. Finally, Defendant Campbell testified in his deposition on the training he received on applying for arrest warrants, summarizing that he was trained by training officers and by other officers on the job. (Doc. No. 25 at 14). In considering all this evidence, it is possible for a jury to find the training of Sandusky officers was inadequate. Therefore, the Court moves to the second prong of this analysis.

A plaintiff must establish deliberate indifference by showing "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005). Plaintiff has offered no evidence of prior instances of constitutional violations in relation to the practices of Sandusky police officers. As such, Plaintiff's argument that Defendant City of Sandusky is liable for a failure to train or supervise its officers fails, and the city is entitled to judgment as a matter of law.

Next, to succeed on a claim that the city engaged in a custom of tolerance or acquiescence, Plaintiff must show that the city engaged in "a pattern of inadequately investigating similar claims." *Burgess*, 735 F.3d at 478. As concluded above, Plaintiff has failed to offer evidence of other claims of unconstitutional conduct within Sandusky, and as such, he cannot show that the city inadequately investigated claims of this nature. With no existing pattern, Plaintiff cannot show a custom of tolerance or acquiescence. Therefore, Plaintiff's claims against Defendant City of Sandusky must be dismissed.

D. Declaratory and Injunctive Relief

Plaintiff sued Defendants seeking declaratory and injunctive relief, in addition to money damages. (Doc. No. 6 at ¶¶ 31–32). Plaintiff asks this Court to declare unconstitutional the arrest and prosecution of all persons operating vehicles for hire and bringing fares from outside the city. (Doc. No. 6 at ¶ 31). Plaintiff also asks this Court to enjoin Defendants from arresting and prosecuting such persons. (Doc. No. 6 at ¶ 32). In their Motion for Summary Judgment, Defendants argue that it is within the city's police power to enact and enforce its vehicle-for-hire ordinances. (Doc. No. 23 at 13). *See* Ohio Const., art. XVIII, § 3. Defendants also argue that

these ordinances conflict with no other general laws and that they do not infringe upon the constitutional rights of drivers or operators of vehicles for hire. (Doc. No. 23 at 13). Plaintiff failed to respond with any arguments as to why declaratory and injunctive relief are proper and warranted. As such, summary judgment is granted to Defendants on this issue.

E. Sanctions

Finally, Defendants have asked this Court to award them attorneys' fees pursuant to 28 U.S.C. § 1927 for having to defend against Plaintiff's since-withdrawn claim that Defendants committed a civil RICO violation. (Doc. No. 30 at 7). Plaintiff's attorney's only response is that Defendants' request must be made by motion. (Doc. No. 34 at 4). The Sixth Circuit has stated that a party seeking sanctions pursuant to § 1927 does not necessarily have to do so in a separate motion. *Meathe v. Ret*, 547 F. App'x 683, 691 (6th Cir. 2013). The Court finds that the issue of sanctions is properly before it for consideration.

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The question to be answered by the Court is whether the attorney knew or should have known that the claim at issue was frivolous or that the attorney's "litigation tactics [would] needlessly obstruct the litigation of nonfrivolous claims." *Hall v. Liberty Life Assur. Co. of Boston*, 595 F.3d 270, 275–76 (6th Cir. 2010) (internal quotation marks and citations omitted). The party seeking sanctions must show that the attorney acted with more than negligence or incompetence; a showing of bad faith is not required. *Id.* at 276.

11

Defendants claim that Plaintiff, through counsel, unreasonably multiplied the proceedings in this case because he was granted leave to dismiss the RICO claim on February 4, 2015, but failed to dismiss the claim until May 26, 2015. (Doc. No. 30 at 7). As this claim was dismissed after Defendants filed their motion for summary judgment, Defendants incurred attorneys' fees in addressing this claim. (Doc. No. 30 at 7).

The Court notes that Defendants repeatedly accuse Plaintiff of wrongdoing in their pursuit of sanctions. The claim brought by Defendants, however, may only be brought against Plaintiff's attorney, John Gold. *See* 28 U.S.C. § 1927. Even reading Defendants' claims as charging Mr. Gold with the violative conduct, Defendants still fail to prove that sanctions are warranted. Defendants, in asking for sanctions, explicitly chose not to "comment[] on the legal efficacy of even filing [the RICO] claim under the facts and circumstances of this case and whether such was frivolous and/or vexatious . . . ." (Doc. No. 30 at 7). Because the validity of the claim is not at issue, Defendants must show that Mr. Gold knew or reasonably should have known that his "litigation tactics [would] needlessly obstruct the litigation of nonfrivolous claims." *Hall*, 595 F.3d at 275–76. It is correct that Defendants had to address the RICO claim in their motion for summary judgment because that claim had not yet been dismissed, despite the Court having granted leave for the claim's dismissal approximately three months prior. (*See* Doc. Nos. 18 & 23). However, Defendants have offered no evidence suggesting that Mr. Gold knew that waiting to dismiss this claim would "needlessly obstruct the litigation of nonfrivolous claims" or that his actions did, in fact, affect the litigation of the parties' other claims. *See Hall*, 595 F.3d at 275–76. Therefore, the Court denies Defendants' request for sanctions against Mr. Gold.

V. Conclusion

Accordingly, Defendants' motion for summary judgment (Doc. No. 23) is granted.. Defendants' request for sanctions is denied.

IT IS SO ORDERED.

                                                 s/ *David A. Katz*
                                                 DAVID A. KATZ
                                                 U. S. DISTRICT JUDGE